TARA K. McGRATH
United States Attorney
E. CHRISTOPHER BEELER
California Bar No.: 330496
New York Bar No.: 5422068
CARL F. BROOKER, IV.
Assistant U.S. Attorneys
Washington DC Bar No.: 1022908
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7748
Fax: (619) 546-0510
Email:       christopher.beeler@usdoj.gov
             carl.brooker@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CARLOS MANUEL DA SILVA SANTOS et al., <br><br> Defendants. | Case No.: 23-CR-2507-RSH <br><br> **United States' Notice of Motion and Motion and Memorandum in Support to Find Limited Waiver of Attorney-Client Privilege and Compel Linklaters LLP to Produce Documents** <br><br> Date: October 18, 2024 <br> Time: 1:30 PM <br><br> Hon. Robert S. Huie |

1    PLEASE TAKE NOTICE that on October 18, 2024, at 1:30 P.M or as soon thereafter
2 as counsel may be heard, Plaintiff, the United States of America, will move the Court for
3 an Order finding waiver of attorney-client privilege under the crime fraud exception and
4 an order compelling Linklaters LLP to produce documents.

5 DATED: October 4, 2024               Respectfully submitted,

                                       TARA K. McGRATH
                                       United States Attorney

                                       */s/ E. Christopher Beeler*
                                       E. CHRISTOPHER BEELER
                                       CARL F. BROOKER IV
                                       Assistant United States Attorneys

## INTRODUCTION

The United States moves this Court for an order finding a limited waiver of the attorney-client privilege between Ethos Asset Management, Inc. (Ethos) and its former attorneys at Linklaters LLP (Linklaters) under the crime-fraud exception and ordering Linklaters to produce all communications between its attorneys and Ethos related to Ethos's November 9, 2023 filings in the matter *Sector Resources Ltd v. Ethos Asset Management, Inc. et al.*, 23-cv-9728 in the U.S. District for the Southern District of New York.

On November 9, 2023, Robin Nunn, an attorney then employed at Linklaters, filed what purported to be a "true and correct copy of Ethos Asset Management's Balance Sheet for the period January 1-September 30, 2023." Attorney Nunn also declared "under the penalty of perjury" that the balance sheet was a "true and accurate copy." However, the balance sheet filed by Attorney Nunn was fraudulent. Grand jury subpoena records confirm that this balance sheet contains at least one false line item, namely an Oanda account ending in -385 purporting to provide Ethos $5,544,595.57 of investment income. This line item in this court-filed document cannot be true because account -385 at Oanda does not exist. Thus, the United States seeks all communications between Ethos and its attorneys at Linklaters that are related to, caused, or influenced the creation, revision, and filing of this false financial document in a federal court.

The crime-fraud exception applies because there is "reasonable cause to believe" that Ethos, "utilized" Linklaters' services "in furtherance of [an] ongoing unlawful scheme." *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996). Specifically, Sector Resources Ltd (Sector) sued Ethos and Defendant Carlos Santos after Sector provided an upfront fee of over $8.3 million in collateral, in the form of a $5,050,780.62 standby letter of credit and $3.25 million in cash, to obtain a $50 million loan from Ethos. Yet, Ethos failed to disburse a cent. Attorney Nunn's filing of Ethos's false balance sheet furthered the criminal scheme, as described in the superseding indictment, because it

offered a falsely inflated snapshot of Ethos's financial health in an apparent effort to delay payment, raise costs on its defrauded borrowers through litigation, and confuse the court.

## RELEVANT BACKGROUND

The court is generally familiar with the advance fee loan scam charged in the superseding indictment. ECF 25. The government incorporates by reference the Statement of Relevant Facts in its September 13, 2024 response in opposition to Defendant's appeal of the court's detention order. ECF 63.

### I.   The Genesis and Use of the Fake -385 Oanda Account Statement

Before providing an upfront fee as loan collateral to Ethos, Ethos's prospective borrowers often sought to perform due diligence on Ethos to ensure it could fund loans, often times in amounts over tens of millions of dollars. As part of Defendant's scheme, to overcome the true paltry nature of Ethos's finances and to deceive these prospective borrowers into believing Ethos had a successful history of financing projects, Defendant enlisted Sean Winston[1] to repeatedly—but falsely—represent to prospective borrowers that Winston and his company, Atlas Capital Management, LLC (Atlas Capital)[2] had successfully funded various project loans with Ethos and Defendant. This culminated in a recorded video conference where Winston, acting at the explicit and written direction of Defendant Santos, promoted the success of a $1 billion project loan between Ethos and Atlas Capital, a deal which never occurred.

Apparently having developed trust in Winston for his willingness to falsely vouch for he and Ethos, Santos began sending Winston money for Atlas Capital to invest and manage. Between approximately September 25, 2020 and February 10, 2023, Ethos sent Atlas Capital roughly $11,526,100 to invest. During this time, Winston used a brokerage firm known as Oanda Corporation (Oanda) to open a trading account ending in -004 and named it "Atlas Ethos MT4 Trading." But Winston never meaningfully invested any of Ethos's money. Instead, Winston used Ethos's money on personal living expenses and to

---

[1] Sean Winston is Co-Conspirator 1 in the superseding indictment.
[2] Atlas Capital is Co-Conspirator Company 1 in the superseding indictment.

4

purchase or lease a series of luxury cars.[3] Occasionally, Defendant Santos would ask Winston for some money, typically by WhatsApp message or email, to help fund business operations, and Winston would wire transfer money to an Ethos bank account.

To perpetuate his fraud on Santos, Winston would email "screenshots" of the -004 Atlas Ethos MT4 Trading account to Defendant Santos showing false monthly balances. For example, on March 9, 2023, Winston emailed Defendant Santos the following attachment showing a false balance in the -004 Atlas Ethos MT4 Trading account:

> **OANDA**
>
> Atlas Capital Management, LLC
>
> **My Funds**
>
> Account Summary
> v20 Account Number [REDACTED]-004
>
> MT4 Server (https://oanda.secure.force.com/AnswersSupport?urlName=MT4-Server-Migration&language=en_US)OANDA-v20 Live-1
>
> | | | | |
> |---|---|---|---|
> | Pricing Type | MT4 | | |
> | Balance | $20,404,064.55 | Unrealized P&L | $58,669.14 |
> | Margin Used | $18,991,702.91 | Realized P&L | $13,783,160.14 |
> | Margin Available | $1,412,361.64 | NAV | $20,462,733.69 |
> | Name | Atlas Ethos MT4 Trading | | Edit |
> | Leverage | 50 : 1 | | Edit |
>
> MT4 v20 Enabled

At no point in time did the -004 Atlas Ethos MT4 Trading account have a $20,404,064.55 balance. Ex. 1, Day Decl. ¶ 2. In actuality, the -004 Atlas Ethos MT4 Trading account balance never exceeded $104,328.22. *Id.* Winston has testified that the -004 Atlas Ethos

---

[3] On or about September 29, 2023, HSI executed a series of seizure warrants and seized some of Ethos's misappropriated funds in two Atlas Capital bank accounts and the following vehicles from Sean Winston's residence: a 2021 Cadillac Escalade, a 2020 Chevrolet Corvette, a 2018 Rolls Royce Dawn, a 2021 Lamborghini Urus, and a 2022 Mercedes Benz S580. Winston has pleaded guilty to five counts of wire fraud associated with his fraudulent acquisition of approximately $875,000 in COVID-19 relief funds. *See United States v. Sean Winston*, 23-CR-2441-RSH, ECF 8 (S.D. Cal. Nov. 30, 2023).

MT4 Trading account is the only account he opened at Oanda for the investment and management of Ethos funds. Ex. 2, Winston Tr. at 23:4-25 to 24:1-13, 36:14-25. This is corroborated by Oanda Corporation's grand jury subpoena returns. Day Decl. ¶ 2. In addition, a review of emails between Winston and Defendant Santos shows that the only account statement "screenshots" sent by Winston to Defendant Santos were for the -004 Atlas Ethos MT4 Trading account. *Id.* ¶ 3.

Despite being an unknowing victim of Winston's fraud, Defendant Santos accelerated his own separate advance-fee loan scam by manipulating the -004 Atlas Ethos MT4 Trading account statements by changing the account number and *further* inflating the balances to make prospective borrowers believe Ethos had *more* money that it did. In one instance, on or about May 11, 2023, and for the purpose of inducing a prospective borrower to pay the upfront fee, Defendant Santos sent an email containing the following attachment:

```
                    OANDA                      (/)

Atlas Capital Management, LLC

My Funds

Account Summary
v20 Account Number 001-001-8900512-385

MT4 Server (https://oanda.secure.force.com/AnswersSupport?urlName=MT4-Server
Migration&language=en US)OANDA-v20 Live-1
Pricing Type              MT4
Balance            $359,001,009.01    Unrealized P&L        $11,010.91
Margin Used        $350,000,109.09    Realized P&L      $358,022,166.08
Margin Available     $9,000,889.92    NAV               $359,012,019.92
Name               Atlas Ethos MT4 Trading                         Edit
Leverage           50: 1                                           Edit
Clilm:]Enabled
```

This "screenshot" purports to be an Oanda account statement for an account ending in -385, with a balance of $359,001,009.01, managed by Atlas Capital, and also named

"Atlas Ethos MT4 Trading." The Oanda -385 Atlas Ethos MT4 Trading account does not exist. Day Decl. ¶ 2; Winston Tr. at 36:14-25. Notably, Defendant Santos knew this account and balance were false because on April 13, 2023, Defendant Santos wrote to Winston "I have invested with you at the moment around 21 M USD at Oanda and 4 M USD in cash." Ex. 3.

The government does not shy away from the adage 'If you lie down with dogs, you get up with fleas.' There is no dispute Sean Winston defrauded Defendant Santos with Winston's inflated Oanda screenshots of the -004 Atlas Ethos MT4 Trading account. But Defendant Santos engaged in his own separate fraud by creating his particularly fake $359 million Oanda balance for the -385 Atlas Ethos MT4 Trading account—a multiple of seventeen times Winston's fraud—and using it to induce victim-companies to pledge collateral to Ethos.

## II.  The Sector Resources Deal with Ethos

Between December 2022 and June 2023, Sector Resources and Ethos negotiated a project loan agreement, ultimately resulting in an agreement where Ethos would provide Sector Resources a $50 million loan in exchange for Sector Resources paying an upfront collateral fee in the amount of a standby letter of credit valued at $5,050762.80 and a direct wire transfer of $3,250,000. *See* Exs. 4, 5. The agreement required Ethos to disburse the $50 million loan in five tranches beginning with the initial $10 million tranche due 30 days after Sector Resources transmitted the upfront fee. Ex. 4 at 20. Sector Resources provided the standby letter of credit and cash transfer, totaling over $8.3 million, but Ethos failed to disburse any money.

On November 3, 2023, Sector Resources filed a civil complaint in the United States District Court for the Southern District of New York against Ethos, Defendant Santos, and East West Bank seeking a temporary restraining order and preliminary injunction preventing Ethos, Santos, or East West Bank from drawing on the standby letter of credit or withdrawing funds from any Ethos account at East West Bank. *See Sector Resources Ltd v. Ethos Asset Management, Inc. et al.*, 23-cv-9728, ECF 1 (S.D.N.Y. Nov. 3, 2023).

In *Sector Resources*, no attorney made an appearance for Carlos Santos, but on November 5, 2023, attorney Robin Nunn of Linklaters filed her appearance on behalf of Ethos. *Id.* at ECF 11.

On November 9, 2023, Attorney Nunn filed a "Declaration of Carlos Santos in Support of Defendant Ethos Asset Management, Inc.'s Opposition to Preliminary Injunction," which Defendant Santos signed "under penalty of perjury." Ex. 6. Among Defendant's statements, he swore "For the avoidance of doubt, regarding Ethos' liquidity, as of the date of the filing, Ethos has $699 million in cash and securities." *Id.* ¶ 10. That same day, Nunn filed her own declaration authenticating a 2023 Ethos balance sheet and profit and loss statement. Ex. 7. The 2023 profit and loss statement contained a line for "Investment Income" listing an "Oanda 004" account earning $2,902,637.72 and an "Oanda 385" account earning $5,544,595.57. *See* Ex. 8 at 5. As established above, there is no -385 account at Oanda associated with Ethos.

Defendant was arrested three days later.

## ARGUMENT

Because the attorney-client privilege affords a client the opportunity to communicate in secret, it is susceptible to abuse by those who would hide behind the privilege to conduct criminal offenses. As the Supreme Court has recognized, "[t]he attorney-client privilege is not without its costs." *United States v. Zolin*, 491 U.S. 554, 562 (1989). "The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection — the centrality of open client and attorney communication to the proper functioning of our adversary system of justice — 'ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing*, but *to future wrongdoing*.'" *Id*. at 562-63 (quoting 8 Wigmore, § 2298, p. 573) (emphasis in original). It is, therefore, the purpose of the crime-fraud exception to ensure that the attorney-client privilege "does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *Id*. at 563.

1       The crime-fraud exception applies whenever the evidence demonstrates a "reasonable cause to believe that the attorney's services were utilized in furtherance of [an] ongoing unlawful scheme." *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996). Reasonable cause is more than suspicion but less than a preponderance of evidence. *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996); *see also United States v. Taghizadeh*, 87 F.3d 287, 289 (9th Cir. 1996) ("We have established that the reasonable cause test is not exacting; it is 'considerably milder' than probable cause." (*quoting United States v. Dubrofsky*, 581 F.2d 208, 211 (9th Cir. 1978))).

      There must merely be "some relationship between the communications and the illegality" to make a prima facie case that the client is attempting to do something illegal; it must be something beyond "a sneaking suspicion." *United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002), as amended on denial of reh'g (Mar. 13, 2002). "The government is not obliged to come forward with proof sufficient to establish the essential elements of a crime or fraud beyond a reasonable doubt … since the crime-fraud exception does not require a completed crime or fraud but only that the client have consulted the attorney in an effort to complete one." *In re Grand Jury*, 87 F.3d at 381; *see also United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002) (holding that communications with attorney regarding records subject to an IRS summons were not covered by the privilege); *United States v. Hodge and Zweig*, 548 F.2d 1347, 1354 (9th Cir. 1977).

      The crime-fraud exception applies "even where the attorney is unaware that his advice may further an illegal purpose." *United States v. Laurins*, 857 F.2d 529, 540 (9th Cir. 1988). It also does not matter whether the lawyer took any affirmative step to further the client's illicit purpose; it is the client's knowledge and intentions that control. *In re Grand Jury*, 87 F.3d at 381-82. In other words, the lawyer "need know nothing about the client's ongoing or planned illicit activity for the exception to apply." *Id.* at 382. Where a defendant is using the lawyer to perpetuate a fraud, even where the lawyer is used unwittingly, communications to the lawyer are simply not privileged. *Martin*, 278 F.3d at 1001.

To invoke the crime-fraud exception, a party must "satisfy a two-part test":

> First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." Second, it must demonstrate that the attorney-client communications for which production is sought are "sufficiently related to" and were made "in furtherance of [the] intended, or present, continuing illegality."

*In re Grand Jury Proceedings*, 810 F.3d 1110, 1113 (9th Cir. 2016). The government easily satisfies each prong.

*First*, there can be no serious doubt that Ethos "was engaged in or planning a criminal or fraudulent scheme when it sought" Linklaters' counsel in November 2023 regarding the Sector Resources lawsuit. For instance, to induce Sector Resources into providing over $8.3 million in upfront collateral, on or about February 10, 2023, Defendant Santos emailed Sector Resources a document titled "Annual Financial Statements for the year ended 28 February 2021," which states among other things, Ethos had $300,649,646 in total assets for year 2020 and its "independent auditor" was a company named Hoffman & Associates. *See* Ex. 9, 10. Hoffman & Associates, a San Diego based bookkeeping and accounting firm, has provided its Ethos-related files pursuant to a grand jury subpoena. From the Hoffman files two things are clear: Hoffman & Associates *never* audited Ethos, and the balance sheet it created for Ethos for the year 2020 shows total assets of $116,245.19, *approximately 96% less* than what Ethos told Sector Resources its balance sheet showed. *See* Ex. 11. Through this fraudulent inducement, Ethos obtained over $8.3 million and failed to meet its promise of disbursing tranches of a $50 million loan due to Sector Resources. To cover up and escape the consequences of its fraudulent inducement of Sector Resources, Ethos doubled down on its fraud by causing Linklaters to file an inflated and misleading profit and loss statement in a federal district court. While only Ethos knows why it did this, all indicators point to various motivating incentives, primarily the desire to maintain the fiction that it had millions of dollars to fund loans (it did not), avoid a temporary restraining order, and delay repayment of Sector's collateral through extended litigation.

*Second*, the government seeks all communications between representatives at Ethos and its attorneys at Linklaters that are related to, caused, or influenced the creation, revision, and filing of a false financial document in a United States district court. This limited and narrowly tailored request is "sufficiently related to . . . [the] present, and continuing illegality" of the fraud on Sector Resources. *In re Grand Jury Proceedings*, 810 F.3d at 1113. This request does not seek to invade the *entire* privileged relationship, if any, between Linklaters and Ethos. Rather, it is surgically targeted at communications that caused Linklaters to compile and file the November 9, 2023 documents; specifically, the Santos declaration and financial document containing false entries. These communications must necessarily have been "in furtherance of" the criminal scheme then being executed by Ethos and its officers. For example, the filed declaration and financial documents furthered the broad fiction that Ethos was worth millions when it was not, and furthered the specific fiction that Ethos was earning substantial income from an Oanda -385 account that did not exist anywhere except in the fantasy of Carlos Santos's criminal imagination.

## CONCLUSION

The government respectfully requests (1) a finding of a waiver of the attorney-client privilege between Linklaters and its former client Ethos related to the November 9, 2023 filings, and (2) an order compelling Linklaters to produce all documents and communications between its attorneys and Ethos related to Ethos's November 9, 2023 filings.

DATED: October 4, 2024                Respectfully submitted,

                                                                              TARA K. McGRATH
United States Attorney

/s/ *E. Christopher Beeler*
E. Christopher Beeler
Carl F. Brooker IV
Assistant United States Attorneys