Mark Johnson (State Bar No. 135288)
OFFIT KURMAN, PA
445 S. Figueroa Street
18th Floor
Los Angeles, CA 90071
Telephone: 213.629.5700
Facsimile: 213.624.9441
Mark.Johnson@offitkurman.com

Janene M. Marasciullo (*pro hac vice* forthcoming)
OFFIT KURMAN, PA
590 Madison Avenue
6th Floor
New York, NY 10022
Telephone: 347.589.8514
Facsimile: 914.761.2196
Janene.Marasciullo@offitkurman.com

Attorneys for Victims
Sector Resources, Ltd. and Sector Capital Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CARLOS MANUEL DA SILVA SANTOS (1), <br><br> Defendant. | Case No: 3:23-cr-02507-RSH <br><br> **COMBINED RESPONSE AND MOTION FOR RESTITUTION BY VICTIMS, SECTOR RESOURCES, LTD. AND SECTOR CAPITAL. CORP.** <br><br> Hearing Date: July 17, 2025 <br> Time: 1:30 p.m. <br> Judge: Hon. Robert S. Huie <br> Courtroom 3B |

## INTRODUCTION

Pursuant to the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, the Victim and Witness Protection Act, 18 U.S.C. § 3664(d)(5), and the Crime Victims' Rights Act, 18 U.S.C. §§ 3771(a); 3771(d)(3), Sector Resources, Ltd. ("Sector Resources") and Sector Capital Corporation ("Sector Capital"), respectfully request that the Court enter an order of restitution that requires defendant, Carlos Manuel da Silva Santos ("Mr. Santos") to provide restitution to Sector Resources and

1

Sector Capital in the amount of $8,749,977.50. There is good cause for this request.

The Plea Agreement between Mr. Santos and the Government expressly identifies Sector Resources and Sector Capital (collectively, "the Sector Companies") as victims of the wire fraud conspiracy to which Mr. Santo has pled guilty. Dkt. 121 at p. 19, ¶ B.ii. It also requires Mr. Santos to pay the sum of $8,250,000 in restitution to the Sector Companies. *Id.* Thus, there is no dispute that the Sector Companies are victims of Mr. Santos' wire fraud scheme or that they suffered a multi-million injury as a result of his wire fraud scheme. However, a restitution order that requires Mr. Santos to pay $8,250,000 in restitution to the Sector Companies will not provide full restitution to the Sector Companies as required by the MVRA.

As explained below, the Sector Companies provided collateral worth $8,300,760.82 to obtain a loan from Mr. Santos' company, Ethos Asset Management, ("Ethos"), and incurred expenses of $408,746.68 to obtain that collateral. However, Ethos did not provide any loan or loan funds to the Sector Companies. Dkt. 121 at ¶ 10.d. Thus, as a result of Mr. Santos' wire fraud scheme, the Sector Companies suffered losses of $8,709,507.50. In addition, the Sector Companies incurred attorney's fees of $40,470.00 in connection with the Government's prosecution of Mr. Santos. Therefore, in accordance with the MVRA and CVRA, the Sector Companies respectfully request that the Court enter a restitution order that requires Mr. Santos to pay $8,749,977.50 to them. In support of this request, the Sector Companies rely upon this motion, the February 19, 2025 Declaration of William Dell'Orfano, which was a supplement to their Victim Impact Statement, and which is attached hereto as Exhibit A and its attached exhibits,[1] and the Declaration of Janene Marasciullo, which is attached hereto as Exhibit B and its attached exhibit.

A.   **Factual Background**

Mr. Santos has admitted that the Sector Companies are victims of the wire fraud conspiracy to which Mr. Santos had pled guilty and that he owes restitution of $8.25 million to the Sector Companies. Dkt. 121 at p. 19 at ¶ B.ii. Mr. Santos also agreed to "the entry of an order of restitution *in the full*

---

[1] Exhibits 1-10 of Mr. Dell'Orfano's declaration are referred to as Exhibits A-1 through A-10.

2

*amount of the victim(s)' losses* as determined by the Court," in accordance with the MVRA. *Id.* at p. 19, ¶ B.iii. Thus, there is no dispute that the Sector Companies are entitled to restitution.[2] However, the Plea Agreement materially understates the restitution that Mr. Santos owes to the Sector Companies.

As explained by Mr. Dell'Orfano, a result of Mr. Santos' wire fraud scheme, the Sector Companies provided $8,300,760.82 in collateral to Ethos to obtain a $50 million loan. Ex. A at ¶¶ 9-20, 30; Ex. A-5, A-6. On April 5, 2023, in reliance on Santos' misrepresentations and false promises to deliver a $50 million loan to Sector Resources, the Sector Companies delivered a standby letter of credit ("SBLC"), worth $10 million to Ethos' bank, East West Bank ("EWB"). Ex. A ¶ 22, Ex. A-3. On May 15, 2023 and May 16, 2023, Santos falsely claimed that EWB reduced the SBLC due to the failure of First Republic Bank and demanded the Sector Companies provide cash collateral of $3.25 million to obtain the promised $50 million loan. Ex. A ¶ 24. On May 17, 2023, EWB reduced the face value of the SBLC without explanation. Ex. A at ¶ 25, Ex. A-3. In reliance on Santos' misrepresentations, on June 6, 2023 the Sector Companies delivered $3.25 million to Ethos' bank via wire transfer. Ex. A at ¶¶ 24 - 29, Ex. A-4. Thus, by June 6, 2023, the Sector Companies provided $8,300,760.82 in collateral to Santos and Ethos. Ex. A ¶ 30; Ex. A-2, Ex. A-3, Ex. A-4.

The Sector Companies incurred fees of $408,748,69 to obtain this collateral. Ex. A at ¶¶ 31-32, Ex. A-5, Ex. A-6. Specifically, the Sector Companies paid fees of $89,202.95 to their bank to obtain the SBLC. Ex. A at ¶ 32, Ex. A-5. In addition, the Sector Companies paid interest of $319,543.73 in connection with the cash collateral. Ex. A at ¶ 32, Ex. A-6.

However, as Santos admitted, Ethos never delivered a penny of the promised $50 million loan to the Sector Companies. Dkt. 121 at ¶ 10.d; Ex. A at ¶ 33. Although the Sector Companies took action to recover their collateral, *see, e.g., Sector Resources, Ltd. et al. v. Ethos Asset Management, Inc. et al.*, (S.D.N.Y. 23-cv-09728-ER), Mr. Santos obstructed that proceeding by submitting a materially false

---

[2] Because the Government and Mr. Santos agree that the Sector Companies are victims of Mr. Santos' wire fraud scheme, who are entitled to restitution, this Motion addresses only the amount of restitution due to the Sector Companies. However, the facts concerning Mr. Santos' efforts to defraud the Sector Companies are summarized in the Declaration of William Dell'Orfano. Ex. A at ¶¶ 6-52.

declaration and a materially false financial statement to convince a federal court that Ethos had $699 million in cash and thus, an injunction was not necessary. Ex. A at ¶ 37; Ex. A-7 at p. 3, ¶ 10, Ex A-7 at p. 10; *see Sector Resources, Ltd. et al. v. Ethos Asset Management, Inc. et al.*, (S.D.N.Y. 23-cv-09728-ER), Dkt. 32 at ¶ 10; Dkt. 30-11 at p. 3.

The Sector Companies have not recovered any of their collateral or fees. Ex. A at ¶¶ 34; 48; Ex. B at ¶ 11. Thus, as a direct result of Santos' wire fraud conspiracy, the Sector Companies have lost $8,709,507.50,[3] which includes $8,300,760.82 in lost collateral and $408,746.68 in fees paid to obtain the collateral. In addition, the Sector Companies incurred legal fees of $40,470.00 to assist the Government in its prosecution of Mr. Santos. Ex. B at ¶¶ 9-10; Ex. A at ¶ 50. As explained below, the MVRA requires Mr. Santos to pay restitution of $8,749,977.50 to the Sector Companies.

  B.  **Argument**

    a. **The Sector Companies Are Entitled to Full Restitution and Are Entitled to File a Motion Seeking Full Restitution**

"[T]he Mandatory Victims Restitution Act, as the name suggests, made restitution mandatory for certain crimes, including any offense committed by fraud or deceit." *In re Davis,* __ F.4th__, 2024 WL 1551409 at *5 (9th Cir. June 2, 2025) (citing 18 U.S.C. § 3663A(a)(1)). In addition, the Crime Victims' Rights Act ("CVRA") gave victims the right to be heard in any sentencing proceeding. *In re Davis,* 2024 WL 1551409 at *6 (citing 18 U.S.C. § 3771(a)(1)). Under the CVRA, a victim may enforce this right by filing a motion in the district court where the defendant is being prosecuted for relief. *In re Davis,* 2024 WL 1551409 at *6 (citing 18 U.S.C. § 3771(d)(3)). Indeed, "Section 3771(d)(3) directs the district court to consider 'any motion' asserting crime victims' rights." *In re Davis,* 2024 WL 1551409 at *8. Pursuant to the CVRA, the Sector Companies respectfully submit that the Court should issue a restitution order that directs Santos to pay restitution in the amount of $8,749,977.50 to the Sector Companies.

---

[3] The sum of the lost collateral ($8,300,760.82) and the fees paid to obtain the collateral ($408,746.68) is $8,709,507.50. However, the Sector Companies understated this sum by $1.00 in their Victim Impact Statement and in the Dell'Orfano declaration.

Here, there is no dispute that the Sector Companies were "directly and proximately harmed" as a result of Mr. Santos' wire fraud or that they are entitled to restitution. Indeed, the Government and Santos agree that the Sector Companies are victims of Santos' wire fraud scheme and that Santos must pay restitution to the Sector Companies. Dkt. 121 at p. 19. The only matter in dispute is the amount of restitution due to the Sector Companies.

The MVRA requires Santos to make full restitution to the Sector Companies. 18 U.S.C. § 3663A(b)(1). The Ninth Circuit recently reiterated that "[t]he 'primary and overarching goal' of the Mandatory Victims Restitution Act 'is to make victims of crime *whole*, to *fully* compensate these victims for their losses and to restore these victims to their original state of well-being." *In re Davis,* 2024 WL 1551409 at *11 (citing *United States v. Moreland,* 622 F.3d 1147, 1170 (9th Cir. 2010) (italics in original, underscoring added)); *see also* Government Motion and Brief in Support of Restitution at p. 3 (citing cases). Disputes concerning the amount of restitution due "shall be resolved by the Court by the preponderance of the evidence." 18 U.S.C. § 3664(e); *United States v. Hymas,* 780 F.3d 1285, 1281 (9th Cir. 2015). As the Government's Motion notes, "a victim['s] affidavit[] will generally provide sufficient, reliable evidence to support a restitution order." Government Motion, Dkt. 156 at p. 5 (citing *United States v. Wakine,* 543 F.3d 546, 548 (9th Cir. 2008)).

The record, which includes the sworn declaration of Mr. Dell'Orfano and supporting bank records, establishes that the Sector Companies lost 8,709,507.50 as result of Mr. Santos' wire fraud scheme. The evidence demonstrates that the Sector Companies lost collateral worth $8,300,760.82. Ex. A at ¶¶ 22, 25, 29, 30, 48-49, 51, 53, Ex. A-2, A-3, A-4, A-9, A-10. Likewise, the evidence demonstrates that the Sector Companies paid $408,746.68 in fees paid to obtain this collateral. Ex. A at ¶¶ 31-32, Ex. A-5; Ex. A-6. In accordance with the MVRA, the Court should enter a restitution order that directs Santos to reimburse the Sector Companies for these losses. 18 U.S.C. §§ 3663A(b); 3663A(a)(4).

The Plea Agreement establishes that the Sector Companies lost collateral as a direct result of Santos' wire fraud scheme, but it understates the value of the collateral by $50,760.82. Further, the Plea Agreement does not account for the fees that the Sector Companies paid to obtain the collateral, even

those fees were also the direct result of Santos' wire fraud conspiracy. Indeed, the Sector Companies incurred fees to obtain the SBLC or the cash collateral because Santos demanded collateral as part of his wire fraud scheme. It was entirely foreseeable that the Sector Companies' bank would charge fees to issue and maintain the SBLC and in connection with lending money to provide collateral. Thus, these fees were not simply "closely related" to Mr. Santos' wire fraud scheme, they were the direct result of his scheme. Government Motion at p. 3-4 (citing *In re Majesty the Queen in Right of Canada,* 785 F.3d 1273, 1276 (9th Cir. 2015)). Thus, as a direct result of Santos' wire fraud, the Sector Companies suffered losses of $8,709,507.50, in the form of lost collateral and fees incurred to obtain the collateral.

In addition to these losses, the Sector Companies incurred legal fees of expenses of $40,470 participating in the Government's investigation and prosecution of Mr. Santos. Ex. B at ¶¶9-10. Under the MVRA, the order of restitution shall require the defendant to pay the "expenses incurred during and directly related to participation in the investigation or prosecution of the offense." 18 U.S.C. § 3663A(a)(4); *Lagos v. United States,* 584 U.S. 577, 578, 580 (2018); Government's Motion and Brief in Support of Restitution (Dkt. 156) at p. 15.

In sum, the Sector Companies suffered losses of $8,709,507.50 as a direct result of Santos' wire fraud scheme and incurred expenses of $40,470 in connection with the Government's prosecution of Santos. Thus, the Court should enter an order of restitution that requires Santos to pay restitution of $8,749,977.50 to the Sector Companies.

## CONCLUSION

For the foregoing reasons, the Sector Companies respectfully request the Court to issue an order of restitution directing Mr. Santos to pay $8,749,977.50 in restitution to the Sector Companies.

Date:   June 27, 2025

Respectfully Submitted,

OFFIT KURMAN, PA

/s/Mark Johnson
Mark Johnson
Attorneys for Sector Resources, Ltd., and Sector Capital Corporation

4920-9044-8977, v. 1